## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **TIMOTHY SHELDON,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| **v.** ) | **Civil No. 4:24-cv-13157-MRG** |
| ) | |
| **F.W. WEBB COMPANY, MICHAEL** ) | |
| **PERRY, in his official and personal** ) | |
| **capacities, and RYAN MILLIKEN, in his** ) | |
| **official and personal capacities** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## ORDER ON DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER FED. R. CIV. P. 12(b)(6) [ECF No. 12]

**GUZMAN, J.**

Plaintiff, Timothy Sheldon ("Plaintiff" or "Sheldon") brings this action against his former employer F.W. Webb Company ("F.W. Webb") and co-workers, Defendants Michael Perry ("Perry") and Ryan Milliken ("Milliken"), alleging various violations under Mass. Gen. Law ch. 151B ("Chapter 151B") and Title VII 42 U.S.C. §2000e(3) ("Title VII") in connection with his protected activity of supporting and testifying on behalf of a fellow co-worker's racial discrimination complaint filed with the Massachusetts Commission Against Discrimination ("MCAD"). Sheldon also brings claims of Intentional Infliction of Emotional Distress ("IIED") and intentional interference with advantageous business relations. [See Compl., ECF No. 1-1]. Defendants bring a partial motion to dismiss all counts, except for the retaliation claims under Chapter 151B and Title VII. [See Defs.' Mot. Dismiss, ECF No. 12; Defs.' Mem. Supp. Dismiss, ECF No. 13].

For the reasons stated below, the partial motion to dismiss, [ECF No. 12] is **GRANTED IN PART** and **DENIED IN PART.**

I.        **BACKGROUND**

The following relevant facts are taken primarily from the allegations in Plaintiff's Complaint, [Compl.], and are accepted as true for purposes of this motion. <u>Ruivo v. Wells Fargo Bank, N.A.</u>, 766 F.3d 87, 90 (1st Cir. 2014) (explaining that a reviewing court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."). All plausible inferences are made in Plaintiff's favor. <u>Id</u>.

a)  **Mr. Devlin's MCAD Complaint**

Plaintiff, Timothy Sheldon, was employed by Defendant F.W. Webb for approximately eleven years, most recently at the Auburn, Massachusetts location. [Compl. ¶ 8]. F.W. Webb is a wholesale distributor of plumbing, heating, cooling, and industrial products. [<u>Id</u>. ¶ 9]. Defendants Ryan Milliken and Michael Perry were employees of F.W. Webb. [<u>Id</u>. ¶¶ 3-4].[1]  While working in his role as the Inside Sales Representative, Sheldon alleges he would routinely overhear and witness overt discriminatory comments directed at his black co-worker Stephen Devlin ("Devlin"). [<u>Id</u>. ¶¶ 8, 11]. The alleged discriminatory acts were conducted by several co-workers who are not parties to this action. [<u>Id</u>.¶¶ 12-17]. In or about April 2021, Devlin filed an internal complaint regarding the discriminatory comments and conduct of his co-workers, and Sheldon was then interviewed where he confirmed the discriminatory treatment of Devlin. [<u>Id</u>. ¶¶ 18-20]. The

---

[1] Plaintiff never explicitly states that Defendants Milliken and Perry were his supervisors; however, he states that they had the ability to approve his paid time off requests and describes them generally as management figures, [Compl. ¶ 41], including that Defendant Perry was the General Manager at the time of Plaintiff's employment. [<u>Id</u>. ¶ 48]. Therefore, the Court will construe these Defendants as supervisors for purposes of this order.

information Sheldon communicated during his interview was allegedly shared with an F.W. Webb attorney and was subsequently communicated to the F.W. Webb management team including Defendants Perry and Milliken. [Id. ¶ 21].

On May 9, 2022, Devlin filed a race discrimination claim against F.W. Webb with the Massachusetts Commission Against Discrimination ("MCAD"). [Id. ¶ 22]. On August 14, 2023, Sheldon submitted a witness statement on Devlin's behalf to MCAD regarding the racial discrimination he witnessed. [Id. ¶¶ 23-24]. On September 11, 2023, a Human Resources employee from F. W. Webb met with Sheldon to discuss the information submitted to MCAD. [Id. ¶ 25]. In the meeting, Sheldon confirmed his testimony and informed HR of additional violations from co-workers not named in the present action. [Id. ¶¶ 25-27]. Plaintiff alleges that the information communicated to HR was later shared with Plaintiff's employers, including Defendants Perry and Milliken. [Id. ¶ 28].

### b) The alleged retaliation against Sheldon

The week after speaking with the HR employee, Sheldon was called to Defendant Perry's office where he was "chastised" for his testimony on behalf of Devlin. [Id. ¶¶ 30-33]. Sheldon was informed by Perry that his reporting of discrimination against Devlin and his witness statement given in support of Devlin's MCAD complaint was "a violation of company policy" and should have been handled by an internal investigation. [Id. ¶ 33]. Perry told Sheldon, to "find another company to work for or a different location to work" and that he didn't know why Sheldon had "a hair across [his] ass.'" [Id. ¶35]. Perry then told Sheldon that Sheldon had "[gone] around the companies back [by] submitting [his] statement." [Id. ¶ 36].

Sheldon alleges that after this encounter he began to "feel isolated and removed from the daily flow of information within the office," which included Defendants Perry and Milliken

ignoring Plaintiff Sheldon in the hallway and averting eye contact during company meetings, and delays in approval for paid time off requests. [Id. ¶¶ 39-41, 43]. Plaintiff Sheldon alleges that on September 25, 2023, an attorney for F.W. Webb presented a draft affidavit to Sheldon, and he was "instructed to sign [the affidavit] to rescind his previous testimony. Plaintiff Sheldon declined to sign the affidavit." [Id. ¶ 42]. Over the next several weeks, Defendant Milliken asked Sheldon if he was looking for another job, falsely claimed that Sheldon was out of vacation days, and subsequently denied Sheldon's PTO requests. [Id. ¶¶ 44, 45, 49].

On October 12, 2023, Plaintiff Sheldon alleges that Milliken called him to Milliken's office and informed Plaintiff that "Defendant Perry could 'become a felon overnight with the guns he owned if certain laws get passed.'" [Id. ¶ 46]. Sheldon avers that these comments were intended to threaten, intimidate, and coerce him for his refusal to sign the affidavit refuting his testimony to MCAD. [Id. ¶ 47]. Sheldon was then informed that "as long as Defendant Perry continues in his role as General Manager, Plaintiff shouldn't expect any promotion and instead there had been talks about demoting Plaintiff to a counter salesman." [Id. ¶ 48]. The October meeting was followed by incidents of Milliken calling Sheldon a "smart ass" in front of his co-workers, and Perry approaching Sheldon from behind, placing his hands on the back of his neck, and calling him into his office for a meeting. [Id. ¶¶ 50-53]. Sheldon alleges that other employees had left their roles due to Perry's conduct, and therefore he found the "invasion of his personal space" threatening. [Id. ¶¶ 54, 55]. When Sheldon complained about the physical touch from Perry, Defendant Milliken reviewed the video surveillance and said, "that it wasn't even bad . . . that's how men play." [Id. ¶ 55].

In November 2023, Defendant Perry told Sheldon that he needed to find another job because his co-worker, Chivallatti – who was named in the MCAD complaint – was uncomfortable

with Sheldon's testimony. [Id. ¶ 56]. Plaintiff Sheldon alleges there were several false allegations Defendants made against him as a pretext for discharge, including that a customer complained when they had not. [Id. ¶¶ 57-59].  On January 5, 2024, Milliken called Sheldon into his office and "berated him" for allegedly making the "workplace toxic" and claiming that Sheldon was a "problem," and nicknamed him "Mr. Toxic." [Id. ¶¶ 63-64]. On January 15, 2024, Perry told Sheldon that he had "caus[ed] problems for the company" in reference to his testimony for Mr. Devlin's complaint. [Id. ¶ 65]. On January 16, 2024, Plaintiff received notification that he was terminated from the Company. [Id. ¶ 66].

### A.  PROCEDURAL HISTORY

On January 16, 2024, Plaintiff Sheldon was terminated from F.W. Webb. [Id. ¶ 66]. On or about July 23, 2024, Plaintiff Sheldon filed a Charge of Discrimination at MCAD (Dkt. No. 24WEM022289). [Id. ¶ 5]. The Charge was jointly filed with the Equal Employment Opportunity Commission ("EEOC"). [Id. ¶ 5-6]. Plaintiff Sheldon later withdrew his Charge of Discrimination with MCAD and EEOC. [Id. ¶ 7]. On November 25, 2024, Plaintiff Sheldon filed a complaint against Defendants in Middlesex Superior Court, Case No.2484-cv-03086. Defendants timely removed the action to this court on December 20, 2024. [ECF No. 1]. On January 17, 2025, Defendants filed a partial motion to dismiss, [ECF No. 12], and Plaintiff later opposed the motion [ECF No. 20].

### II.  LEGAL STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks

for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 556). When deciding a 12(b)(6) motion to dismiss, a court must "accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor." <u>Grajales v. P.R. Ports Auth.</u>, 682 F.3d 40, 44 (1st Cir. 2012) (citing <u>Nisselson v. Lernout</u>, 469 F.3d 143, 150 (1st Cir. 2006)). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." <u>Gagliardi v. Sullivan</u>, 513 F.3d 301, 305 (1st Cir. 2008) (citations omitted). At the pleading stage, a plaintiff is not required to "plead facts sufficient to establish a prima facie case," but "those elements are part of the background against which a plausibility determination should be made." <u>Rodriguez-Reyes v. Molina-Rodriguez</u>, 711 F.3d 49, 54 (1st Cir. 2013).

### III.    <u>DISCUSSION</u>

Plaintiff Sheldon asserts claims of retaliation under Title VII and Chapter 151B (Counts I and IV), as well as the following claims under state law, including: Intentional Infliction of Emotional Distress (Count II), Intentional Interference with Advantageous Business Relations (Count III), Hostile Work Environment in Violation of Mass. Gen. Laws ch. 151B (Count V), Aiding and Abetting in Violation of Mass. Gen. Laws ch. 151B (Count VI), and Interference, Coercion, or Intimidation in Violation of Mass. Gen. Laws ch. 151B (Count VII). Defendants did not move to dismiss the retaliation claims but moved to dismiss Counts II, III, V, VI, and VII proffered in the complaint. The allegations related to the following counts all stem from the alleged retaliation conducted by Defendants F.W. Webb, Perry, and Milliken.

### A. <u>COUNT II—Intentional Infliction of Emotional Distress</u>

Sheldon brings a common-law claim of Intentional Infliction of Emotional Distress ("IIED") against Defendants F.W. Webb, Perry, and Milliken.[2] [Compl. ¶ 70]. Sheldon asserts that the Defendants intended to inflict emotional distress on Sheldon and knew or should have known that emotional distress was a likely result of the Defendants' conduct. [Compl. ¶ 72]. Defendants argue that Sheldon's claim for IIED is precluded by the Massachusetts Workers' Compensation Act ("Act"). [Def.s' Mot. Dismiss. Memo., ECF No. 13]; Mass. Gen. Laws ch. 152, § 24.2.

The Court finds that the Workers' Act does not preclude Plaintiff from asserting a claim of IIED, however, Plaintiff has failed to state a plausible claim for IIED.

#### i. *Massachusetts Worker's Compensation Act, Mass. Gen. Laws ch. 152, § 24.2*

The Workers' Compensation Act provides the exclusive remedy for workplace claims for personal injuries and bars common law claims that fall within its scope. <u>See</u> Mass. Gen. Laws ch. 152. The Act's exclusivity applies where (1) the plaintiff is an employee, (2) the plaintiff's condition is a "personal injury" as defined in the act and (3) the injury is shown to have arisen out of and in the course of employment. <u>Brown v. Nutter, McClennen & Fish</u>, 696 N.E.2d 953, 955 (Mass. App. Ct. 1998). Historically, all personal injuries "aris[ing] out of the nature, conditions, obligations, or incidents of the employment," would be precluded from the Act. <u>Doe v. Purity Supreme, Inc.</u>, 664 N.E.2d 815, 819 (Mass. 1996).

In 1987, the Massachusetts Supreme Judicial Court "recognized an exception to the exclusivity provision, holding that it is not applicable when an employee brings 'an action against

---

[2] The Court assumes that the Plaintiff brings this claim against all defendants, however, the Complaint does not specifically allege the claim against all parties. <u>See</u> Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice").

a fellow employee who commits an *intentional tort* which was is *no way within the scope of employment* furthering the interests of the employer.'" Spagnuolo v. Holzberg, 158 N.E.3d 496, 502 (Mass. App. Ct. 2020) (emphasis added) (quoting O'Connell v. Chasdi, 511 N.E.2d 349, 351 (Mass. 1987) (holding that because the intentional torts of IIED and assault and battery, are "'not remotely related to the employer's interests,' an employee who is subjected to intentional infliction of emotional distress stemming from sexual harassment by a co-employee is not barred by the act from suing that individual.")) (internal citations omitted). The Act, therefore, "does not shield individual employees from liability for any and all intentionally tortious conduct." Ruffino v. State St. Bank & Trust Co., 908 F. Supp. 1019, 1049 (D. Mass. 1995). "[I]ntentional torts which are in no way within the scope of employment furthering the interests of the employer are not barred by [the Act] because they are not an accepted risk of doing business." Bourbeau v. City of Chicopee, 445 F. Supp. 2d 106, 117 (D. Mass. 2006) (internal citations omitted).

Personal injuries that occur within the scope of an employer's interest remain precluded by the Act. "The scope of employment is 'not construed restrictively' and intentional torts lie within the scope of employment in a variety of situations." Gindi v. Norton, 216 F. Supp. 3d 199, 204 (D. Mass. 2016) (quoting Commonwealth v. Jerez, 457 N.E.2d 1105, 1108 (Mass. 1983). Under Massachusetts law, an employee's conduct is within the scope of employment if it (1)"is the kind employed to perform"; (2) "occurs substantially within the authorized time and space limits"; and (3) "is motivated, at least in part, by a purpose to serve the employee." Wang Lab. Inc., v. Bus. Incentives, Inc., 501 N.E.2d 1163, 1166 (Mass. 1986).

Unlawful acts, such as discrimination, threats, and retaliation are not "considered to be within the scope of a supervisor's duties." LeGoff v. Trustees of Boston Univ., 23 F. Supp. 2d 120, 130 (D. Mass 1998) (citing Presto v. Sequoia Sys., Inc., 633 F. Supp. 1117, 1122 (D. Mass. 1986).

Under circumstances where tortious conduct is committed outside the scope of employment, "a plaintiff may recover where a defendant, by extreme and outrageous conduct and without privilege to do so, causes severe emotional distress." Ruffino, 908 F. Supp at 1050 (citing e.g., Bowman v. Heller, 651 N.E.2d 369 (1995)).

Here, Plaintiff Sheldon is an employee of F.W. Webb, asserting that he suffered from IIED by Defendants Perry and Milliken as a retaliatory result of Sheldon's testimony for MCAD. [Compl. ¶¶ 70-75]. Massachusetts courts do not consider unlawful acts of discrimination and retaliation to be within the scope of employment. LeGoff, 23 F. Supp. 2d at 130. Therefore, Plaintiff's IIED claim is not barred by the Act.

### ii. Intentional Infliction of Emotional Distress

In this case, Sheldon alleges that Defendants intentionally caused him emotional distress. Among other allegations, he asserts that his supervisors asked him on several occasions if he was looking for a new job [Compl. ¶¶ 44, 49, 56], ignored him during meetings and in the hallway, [id. ¶¶ 40, 43], approached him from behind and placed their hands on his shoulders, [id. ¶ 53], referenced another Defendant's ownership of firearms, [id. ¶ 46], and accused him of violating company policy regarding internal investigations, [id. ¶ 33].

To sufficiently allege a claim of IIED, the plaintiff must show that "(1) [the defendant] intended, knew, or should have known that his conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress [sustained by the plaintiff] was severe." Polay v. McMahon, 10 N.E.3d 1122, 1128 (Mass. 2014) (citing Howell v. Enter. Publ'g Co., LLC, 920 N.E. 2d 1, 28 (Mass. 2010)); see also Restatement (Second) of Torts §46 cmts. d & j. "The standard for making a claim

of intentional infliction of emotional distress is very high." Polay 10 N.E. 2d at 1128 (quoting Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996))."'Outrageous' in [the IIED] context means 'a high order of reckless ruthlessness or deliberate malevolence that . . . is simply intolerable.'" Coucelos v. City of Woburn, No. 23-12063-GAO, 2024 U.S. Dist. LEXIS 175744, at *45 (D. Mass. June 18, 2024) (quoting Conway v. Smerling, 635 N.E. 2d 268, 273 (Mass. App. Ct. 1994)). "There is an issue for the jury if reasonable people could differ on whether the conduct is extreme and outrageous." Boyle v. Wenk, 392 N.E.2d 1053, 1056-57 (Mass. 1979) (internal citations omitted). Mr. Sheldon must also show that the Defendants acted "without privilege." Agis v. Howard Johnson Co., 355 N.E.2d 315, 318 (Mass. 1976). The Defendants may be subject to liability for such emotional distress "even though no bodily harm may result." Id.

An inference can be made from the filings that Defendants intended to cause Sheldon fear with their reference to firearms, and when Defendant Perry approached Plaintiff from behind and placed his hands on the back of his neck. [Compl. ¶ 46, 53].  However, these allegations fail to reach the high bar of extreme and outrageous conduct. Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 240 (1st Cir. 2013) (holding that the conduct for an IIED claim must "go beyond all possible bounds of decency, and [be] regarded as atrocious, and utterly intolerable in a civilized community."); see Galvin v. U.S. Bank, N.A., 852 F.3d 146, 161 (1st Cir. 2017) (holding that the standard is "very high and is not met even if the defendant acted with an intent which is tortious or even criminal, with malice, or with a degree of aggravation which would entitle the plaintiff to punitive damages for another tort" (cleaned up)).

Additionally, the complaint lacks any factual allegation concerning the nature and severity of the emotional distress suffered by Plaintiff Sheldon.

Therefore, the Court must **GRANT** the motion to dismiss as to Count II.

B.  **<u>COUNT III – Intentional Interference with Advantageous Business Relations</u>**
**<u>(Against Defendants Perry and Milliken)</u>**

Plaintiff Sheldon alleges that Defendants Perry and Milliken intentionally and improperly interfered with his employment contract with F. W. Webb as retaliation for his testimony, leading to his termination. [Compl. ¶ 76-81]. Defendants argue that the claim fails because Plaintiff cannot allege actual malice on the part of the Defendants. [ECF No. 13 at 9].

For a Plaintiff to succeed on a claim of intentional interference with an advantageous business relationship, they must assert that:

> 1) the plaintiff had a contract or advantageous business relationship with a third party, 2) the defendant knowingly induced the third party to break the contract or to forgo the business relations, 3) the defendant's interference was improper in motive or means, and 4) the plaintiff was harmed by the interference.

<u>Kelleher v. Lowell General Hospital</u>, 152 N.E. 126, 132-33 (Mass. App. Ct. 2020) (citing <u>Psy-Ed Corp. v. Klien</u>, 947 N.E.2d 520 (Mass. 2011)). "To satisfy the third element, plaintiff must allege 'wrongfulness beyond the interference itself.'" <u>Cummings v. City of Newton</u>, 298 F.Supp. 279, 290 (D. Mass. 2018); <u>see</u> <u>James L. Miniter Ins. Agency, Inc. v, Ohio Indem. Co.</u>, 112 F.3d 1240, 1250 (1st Cir. 1997). Improper conduct may exist if a party "used threats, misrepresented any facts [or] defamed anyone" in the course of the interference. <u>Kahalas v. Schiller</u>, 164 F. Supp. 3d 241, 246 (D. Mass. 2016) (quoting <u>United Truck Leasing Corp. v. Geltman</u>, 551 N.E.2d 20, 24 (Mass. 1990) (alterations in original)). In the employment contract context, "a plaintiff may not bring an action against his own employer but may raise such a complaint against an 'individual official of the employer' if he can establish that the 'individual official induced the employer to breach plaintiff's employment contract with **actual malice**.'" <u>See</u> <u>Eaton v. Town of Townsend</u>, Nos. 22-1334, 22-1335, 2023 U.S. App. LEXIS 11381, at *36 (1st Cir. Mass., May 9, 2023) (citing <u>Pierce v. Cotuit Fire Dist.</u>, 741 F.3d 295, 304 (1st Cir. 2014)) (emphasis added).

To prove actual malice, it is the Plaintiff's burden to show more than "mere hostility." Zimmerman v. Direct Fed. Credit Union, 262 F.3d 70, 76 (1st Cir. 2001). Actual malice is recognized by Massachusetts courts as "a spiteful, malignant purpose, unrelated to the legitimate corporate interest." Psy-Ed Corp, 947 N.E. 2d at 536 (quoting Blackstone v. Cashman, 860 N.E. 2d 7 (Mass. 2007); see also, Pierce v. Cotuit Fire Dist., 741 F.3d 295, 304-05 (1st Cir. 2014); Zimmerman 262 F.3d at 76-77 (1st Cir. 2001). For the purposes of this tort, "malice must be the 'controlling factor' in the defendant's conduct." Kelleher, 152 N.E. 3d at 133 (quoting Blackstone 860 N.E. 2d at 7).

The first and fourth prongs are easily satisfied. There is no dispute that Sheldon was actively employed by F.W. Webb and that the Defendants, as Sheldon's colleagues at the company, were aware of this relationship, satisfying the first prong in the analysis. According to Sheldon, the alleged interference led to Sheldon's termination from F.W. Webb, a cognizable harm to Plaintiff. [Compl. ¶ 80].

The issue is whether Defendants Perry and Milliken knowingly induced F.W. Web to terminate Sheldon and whether the interference was done with improper motive or means. The Court finds that Sheldon has asserted sufficient evidence to support these factors. Sheldon asserts that, as pretext for his termination, the Defendants alleged that Sheldon's coworkers felt uncomfortable working with him after he testified for MCAD and reported dissatisfied customers when none had complained. [Compl. ¶¶ 56-59]. He also asserts that Defendants Perry and Milliken were motivated to terminate Sheldon due to Sheldon's testimony with MCAD and his refusal to sign the drafted affidavit refuting his testimony. [Id. ¶ 42]. Plaintiff does not state whether the report of dissatisfied customers or complaints from coworkers were submitted to Human Resources or another decision-maker to inform Sheldon's terminations with the context of

Sheldon's adverse testimony; however, "direct evidence of malice is not required," so long as the plaintiff alleges "specific facts from which a plausible inference of malice can be drawn." <u>Kelleher</u>, 152 N.E.3d at 134 (citing <u>Gram v. Liberty Mut. Ins. Co.</u>, 429 N.E.2d 21, 24 (Mass. 1981)). As previously noted, unlawful acts, such a discrimination, threats, and retaliation are not "considered to be within the scope of a supervisor's duties." <u>LeGoff</u>, 23 F. Supp.2d at 130 (citing <u>Presto</u>, 633 F. Supp. at 1122). Sheldon does not assert of any negative interactions with Defendants Perry or Milliken prior to his MCAD testimony and his subsequent refusal to sign the affidavit. Therefore, it is plausible to assume, given this information, that the conduct described by Plaintiff was motivated by Defendants' intention to retaliate. Therefore, the conduct alleged can be viewed as "actual malice" and "unrelated to the legitimate corporate interest." <u>Psy-Ed Corp</u>, 947 N.E.2d at 536.

The Court finds, after accepting all factual allegations as true and drawing all reasonable inference in his favor, Sheldon sufficiently alleges that Defendants interfered with his business relationship with F.W. Web which led to his termination. Therefore, Defendants' motion to dismiss Count III is **<u>DENIED.</u>**

### C.  Chapter 151B and Title VII

Under Mass. Gen. Laws ch. 151B, §4(4) ("Chapter 151B"), it is unlawful for an employer to discharge, expel, or otherwise discriminate against any person because he has opposed any practices forbidden under Chapter 151B or because he has "filed a Complaint, **testified**, or assisted in any proceeding" alleging a violation of Chapter 151B. Mass. Gen. Laws ch. 151B, §4 (emphasis added). It is unlawful under Chapter 151B, §4(4A),

> . . . for any person to coerce, intimidate, threaten, or interfere with another person
> in exercise or enjoyment of any right granted or protected by this chapter or to

coerce, intimidate, threaten or interfere with such other person for having aided or encouraged any other person in the exercise or enjoyment of any such right granted or protected by this chapter.

Similar protections exist under Title VII of the Civil Rights Act of 1964 ("Title VII"). Under Section 704(a) of Title VII, it is unlawful for an employer to retaliate against an employee for engaging in certain protected activity. 42 U.S.C. §§2000e-3(a). Title VII's "participation clause prohibits an employer from discriminating against someone who made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII." See Ray v. Ropes & Gray LLP, 799 F.3d 99, 107 (1st Cir. 2015). The participation clause protects both the individual who files a complaint with EEOC, and "an employee who informally files or defends a charge of discrimination, involuntarily testifies as a witness in a proceeding, or aids a co-worker in asserting [their] rights." Id. at 107-08. ("Protected opposition activity includes responding to an employer's inquiries about inappropriate behavior, writing letters protesting an employer's allegedly unlawful actions, or picketing and boycotting an employer.").

A plaintiff can bring claims of a hostile work environment, aiding and abetting, and interference, coercion, or intimidation under Chapter 151B. Sheldon advances these claims in his Complaint. The Defendants have not moved to dismiss Plaintiff's Title VII claims.

### i.  COUNT V— Hostile Work Environment Claim (Violation of M.G.L. c. 151B)

Here, Plaintiff asserts that he suffered a hostile work environment for his role in supporting Mr. Devlin's MCAD Complaint. Defendants assert that Plaintiff is precluded from bringing this claim because he is not a member of a protected class. The Court agrees.

14

To establish a prima facie case of a hostile work environment under Title VII or Chapter 151B, Sheldon must show that "(1) [he] is a member of a protected class, (2) [he] was subjected to unwelcome harassment; (3) the harassment was based on the protected status, (4) 'the harassment was so severe or pervasive as to create an abusive work environment,' and (5) 'the harassment was objectively and subjectively offensive.'" Tzoc Santay v. Ice House LLC, No. 24-cv-11583-ADB, 2024 U.S. Dist. LEXIS 207813, at *10 (D. Mass. Nov. 15, 2024) (quoting Avci v. Brennan, 285 F. Supp.3d 437, 442 (D. Mass. 2018)); see College-Town, Div. of Interco, Inc. v. Massachusetts Comm'n Against Discrimination, 508 N.E.2d 587, 590-91 (Mass. 1987) (recognizing that an employee may bring a hostile work environment claim under Mass. Gen. Laws ch. 151B). Assessing whether a work environment is hostile requires a fact-specific analysis of the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Thompson v. Coca-Cola Co., 522 F.3d 168, 180 (1st Cir. 2008) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998)) (applying Massachusetts law). The alleged conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment" to assert an abusive working environment. Allard v. Citizens Bank, 608 F. Supp.2d 160, 166 (D. Mass. 2009) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998)).

When assessing a hostile work environment claim, courts must address both subjective and objective components. Allard, 608 F. Supp.2d at 166. "The plaintiff must demonstrate that [they] actually perceived the environment to be hostile or abusive as a result of the defendant's conduct" and that the "alleged conduct was sufficiently severe or pervasive that a reasonable person would

perceive the environment to be hostile or abusive." Id. (citing Harris v. Forklift Sys., 510 U.S. 17, 21-22 (1993)).

Plaintiff has failed to allege that he is a member of a protected class and has failed to sufficiently allege severe conduct to assert an abusive working environment. Plaintiff does not assert any evidence to allege a hostile work environment was based on a *protected class status* but alleges facts in support of retaliation of *protected conduct*. Any and all incidents noted by the Plaintiff to assert the hostile work environment claim more appropriately support his retaliation claims.

Therefore, the Court **GRANTS**, without opposition, the motion to dismiss as to Count V.


ii.   **COUNT VI – Aiding and Abetting Claim (Violation of M.G.L. c. 151B)**

Sheldon brings a claim of aiding and abetting in violation of Mass. Gen. Laws. ch. 151B, §4(5) against the individual Defendants Perry and Milliken, asserting that they aided and abetted F.W. Webb in its retaliation. [Compl. ¶ 88]. Section 4(5) makes it unlawful "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so." Mass. Gen. Laws ch. 151B, § 4(5).

To establish a claim for aiding and abetting under Chapter 151B, Plaintiff must show: (1) that the defendant committed "a wholly individual and distinct wrong . . . separate and distinct from the claim in main"; (2) "that the aider or abettor shared an intent to discriminate not unlike that of the alleged principal offender"; and (3) that "the aider or abettor knew of his or her supporting role in an enterprise designed to deprive [the plaintiff] of a right guaranteed to him or her under Mass. Gen. Laws ch. 151B." Lopez v. Commonwealth, 978 N.E.2d 67, 82 (Mass. 2012). An aiding and abetting claim is entirely derivative of a discrimination claim.  Fisher v. Town of

Orange, 885 F. Supp.2d 468, 476-77 (D. Mass. 2012) (citing Abramian, 731 N.E.2d at 1088). This means that in addition to the "individual and distinct wrong" that Defendants must be alleged to have committed, the Complaint must also allege the commission of an underlying act of discrimination by the principal offender. Lopez, 978 N.E.2d at 82 (citing Russell v. Cooley Dickinson Hosp., Inc., 772 N.E.2d 1054, 1066 n.7 (Mass. 2002)).

The Court finds that Plaintiff has properly alleged individual and distinct acts in a common scheme to amount to aiding and abetting. Sheldon's assertions support that it was Defendants Perry and Milliken who were the *primary* actors in the retaliation for Sheldon's testimony. Sheldon notes that it was the individual Defendants who made him question his job security, who threatened him, and who provided "false pretext as a basis to justify the termination of his employment from F.W. Webb." [Compl. ¶¶ 56-59]. The Defendants are cited throughout the complaint independently, and together, for the separate events of retaliation alleged by Plaintiff. [Compl. ¶ 46 ("Defendant Milliken informed Plaintiff that Defendant Perry could 'become a felon overnight with the guns he owned if certain laws get passed.'"); ¶ 48 ("Defendant Milliken then informed Plaintiff that as long as Defendant Perry continues in his role as General Manager, Plaintiff shouldn't expect any promotion and instead there had been talks about demoting Plaintiff to a counter salesman."); ¶ 55 ("When questioned about his conduct, Defendant Milliken reviewed the internal video footage from that incident and stated, 'That it wasn't even bad.' Defendant Perry said[,] 'that's how men play.'")]. These allegations are examples of "wholly individual and distinct wrong[s]" from F.W. Webb's alleged retaliation. Connolly v. Woburn Pub. Sch., 659 F. Supp.3d 92, 115 (D. Mass. 2023). It is the cumulation of these actions that Plaintiff alleges eventually led to his termination. Therefore, these actions were not only "wholly individual and distinct wrong[s]" but the core behavior at issue in this case. The Court at this stage in litigation, taking the facts as true in most

favorable light of the Plaintiff, can assume that the Defendants shared an intent to discriminate and were aware of their supporting role in Sheldon's eventual termination.

Therefore, the Court **DENIES**, the motion to dismiss as to Count VI.

### iii. COUNT VII – Interference, Coercion, or Intimidation Claim (Violation of M.G.L. c. 151B) (Against all Defendants)

Plaintiff alleges a claim of interference, coercion, or intimidation against all Defendants. Defendants assert that Plaintiff has failed to allege sufficient facts to make out a claim of interference or coercion, and that any comments made by Defendants Perry and Milliken were not connected to the Devlin MCAD action. [ECF No. 13 at 14-15].

Under Mass. Gen. Laws ch. 151B, §4(4A), it is unlawful "[f]or any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by [Chapter 151B], or to coerce, intimidate, threaten or interfere with such other person for having aided or encouraged any other person in the exercise or enjoyment of any such right granted or protected by [Chapter 151B]." Coogan v. FMR, LLC, 264 F. Supp. 3d 296, 309 (D. Mass. 2017) (quoting Mass. Gen. Laws ch. 151B, § 4(4A)). Section 4(4A) "independently and explicitly provides for an interference claim, not merely against employers, but against all 'person[s].'" Lopez v. Commonwealth, 978 N.E.2d 67, 77 (Mass. 2012) (internal quotation marks omitted) (quoting Thomas O'Connor Constructors, Inc. v. Mass. Comm'n Against Discrimination, 893 N.E.2d 80, 91 (Mass. App. Ct. 2008)); McLaughlin v. City of Lowell, 992 N.E.2d 1036, 1058 n.34 (Mass. App. Ct. 2013) (internal quotation marks omitted) ("By including [Section] 4(4A) in c. 151B, the Legislature intended to extend the statute's reach beyond employer-employee

interactions to encompass discriminatory conduct by third parties to which an employee could be subjected." (citation omitted).

Liability may rest on claims of either direct discrimination or retaliation. Lopez, 978 N.E.2d at 78. Section 4(4A) is "construed liberally for the accomplishment of its purposes . . . ." Mass. Gen. Laws ch. 151B, § 9. To this end, while an interference claim must rely on intentional conduct, "it is not necessary that a plaintiff allege that such interference not only was intentional but was undertaken with a specific intent to discriminate." Lopez, 978 N.E.2d at 78-79.

The complaint alleges that Defendants F.W. Webb, Perry, and Milliken violated §4(4A) because they coerced, intimidated, threatened or interfered with Sheldon for having aided or encouraged Mr. Delvin in the exercise of protected activity under Chapter 151B.  Mass. Gen. Laws ch. 151B, §4(4A). Sheldon asserts that F.W. Webb drafted an affidavit which would effectively rescind his adverse testimony to MCAD, [Compl. ¶ 42], that Defendant Milliken delayed processing and eventually denied Sheldon's reasonable time off requests, [id. ¶ 41], and that Defendants Milliken and Perry referenced gun possession just two weeks after Sheldon's refusal to sign the affidavit as an attempt to threaten or intimidate him, [id. ¶ 46]. Sheldon argues that these incidents, taken together, were actions meant to coerce him into rescinding his testimony, a protected activity under Chapter 151B.

A claim under §4(4A) is derivative of the underlying discrimination claim, or in this case, the claim of retaliation under Chapter 151B. Lopez, 978 N.E.2d at 78; see Cocuzzo v. Trader Joe's E. Inc., 121 F. 4th 924, 937 (1st Cir. 2024) (holding that a failure to provide a requisite showing of discrimination justified the District Court's granting summary judgment for the section 4(4A) claim of interference.). The issue of retaliation is not before the Court in this partial motion to dismiss. However, after a careful review of the facts in this case, and drawing all reasonable

inferences in his favor, the Court finds it proper to **<u>DENY</u>** the motion to dismiss on Count VII at this time.

IV.    <u>**CONCLUSION**</u>

For the reasons stated above, the Partial Motion to Dismiss, ECF No. 12, is **<u>GRANTED IN PART</u>** and **<u>DENIED IN PART</u>**.


**SO ORDERED.**

Dated: September 26, 2025


  /s/ Margaret R. Guzman
Margaret R. Guzman
United States District Judge